10-7838.111-RSK                                    December 13, 2011

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| ASIUS TECHNOLOGIES, LLC,  ) | |
| ) | |
| Plaintiff,  ) | |
| ) | |
| v.  ) | No. 10 C 7838 |
| ) | |
| SONION US, INC., SONION NEDERLAND  ) | |
| BV, SONION ROSKILDE A/S,  ) | |
| ) | |
| Defendants.  ) | |

## MEMORANDUM OPINION

Before the court are defendant Sonion US, Inc.'s ("Sonion US"): (1) motion to dismiss plaintiff's first amended complaint; and (2) motion for sanctions. For the reasons explained below, we grant its motion to dismiss and deny its motion for sanctions.

## BACKGROUND

Plaintiff Asius Technologies, LLC ("Asius") designs products relating to hearing aids and related devices. (Am. Compl. ¶ 39.) It has filed provisional patent applications for its "Ambrose Diaphonic Ear Lens and Pump" ("ADEL") technology, and has marketed that technology to third parties under confidentiality agreements. (Id. at ¶¶ 43, 46-47, 50.) Those third parties include one or more of the named defendants — Sonion US, Sonion Nederland BV ("Sonion Nederland"), and Sonion Roskilde A/S ("Sonion Roskilde"). (Id. at ¶ 43.) We gather from the parties' Rule 12(b)(1) materials that

- 2 -

Asius had a joint-development agreement with Sonion Nederland. (See Decl. of William J. Taylor ¶ 11 (hereinafter, "Taylor Decl.").) But Asius alleges that the three defendants operate "as a single homogenized business unit," sharing officers, websites, etc. (Am. Compl. ¶¶ 12-21.) After exploring a business relationship with Asius for several months, "Sonion" declared that it was no longer interested in February 2010. (Id. at ¶¶ 44-45, 49.) Asius alleges that in June 2010 it learned that Sonion had told one of Asius' potential business partners that Asius infringed U.S. Patent Nos. 7,227,968 (the "'968 patent") and 7,425,196 (the "'196 patent"). Sonion Roskilde, Sonion US's parent company, is the assignee of both patents. (See '968 patent and '196 patent, attached as Exs. A and B to Am. Compl.) In its response to Sonion US's motion, Asius identifies Siemens as its prospective partner. (See Decl. of Stephen D. Ambrose, attached as Ex. K to Pl.'s Resp., ¶ 2 (hereinafter, "Ambrose Decl.").) Stephen Ambrose, Asius' co-founder, describes a telephone conference that he had with representatives of Siemens' hearing-aid division. At that meeting, Siemens' representatives told him that Sonion's Chief Technology Officer, Art Van Halteren, had convinced them that "Sonion, not Asius, possessed the core intellectual property encompassing the ADEL technology via Sonion's issued patents." (Ambrose Decl. ¶¶ 6-7; see also id. at ¶ 9.) At some point after this meeting,

- 3 -

"Siemens backed away from the commercialization of Asius' ADEL technlogy." (Id. at ¶ 8.)

Asius seeks declaratory judgments that it does not infringe the '968 and '196 patents (Counts I and III) and that those patents are invalid (Counts II and IV). It has also filed state-law claims for tortious interference with prospective economic advantage (Counts V and VI), and separately requests its attorneys fees under 35 U.S.C. § 285 (Count VII). Asius' original complaint named only Sonion US as a defendant. In its motion to dismiss the original complaint, Sonion US argued (among other things) that Asius had sued the wrong party because Sonion US is not the patentee, assignee, or "virtual assignee" of the patents. See 35 U.S.C. § 281 ("A patentee shall have remedy by civil action for infringement of his patent."); Enzo APA & Son, Inc. v. Geapag A.G., 134 F.3d 1090, 1093 (Fed. Cir. 1998) (only a patentee, an assignee, or a "virtual assignee" has standing to sue for patent infringement); Fina Research S.A. v. Baroid Drilling Fluids, Inc., 141 F.3d 1479, 1480-81 (Fed. Cir. 1998) (indicating that there is no "controversy" supporting declaratory-judgment jurisdiction in a suit alleging non-infringement or invalidity against a party that cannot sue for infringement). In response to the motion, Asius amended its complaint to add Sonion Nederland and Sonion Roskilde as defendants. See Fed. R. Civ. P. 15(a)(1)(B). Asius' apparent failure to serve the foreign defendants is problematic: for reasons

- 4 -

that we are about to discuss, Asius' standing to continue pursuing this lawsuit depends in part on its properly joining those defendants. At the same time, they are obviously aware of this lawsuit. The three named defendants in this case are corporate affiliates, and shortly after Asius filed this lawsuit Sonion Nederland sued Asius for breach of contract in the District of Delaware. Sonion US's attorneys in this case represent Sonion Nederland in the Delaware action, and the parties in that case have briefed Asius' motion to transfer that action to this court.[1] In short, the absent defendants will not be prejudiced if we rule on Sonion US's motions at this time.

## **DISCUSSION**

### A. **Legal Standard**

Sonion US argues that the amended complaint fails to remedy the standing problem that it identified in its previous motion to dismiss. Federal Circuit law governs whether Asius has standing to seek declaratory judgments concerning the patents. See WiAV Solutions LLC v. Motorola, Inc., 631 F.3d 1257, 1263 (Fed. Cir. 2010); see also Schreiber Foods, Inc. v. Beatrice Cheese, Inc., 402 F.3d 1198, 1202 (Fed. Cir. 2005). Both parties rely on Seventh Circuit authority to establish the proper scope of the jurisdictional inquiry, (see Def.'s Mem. at 8 n.3; Pl.'s Resp. at

---

[1] The Delaware court recently granted Asius' motion, although Sonion Nederland has moved to reconsider.

7), but there does not appear to be a substantive difference between the two Circuits on this issue.  Under either Circuit's law, we may look beyond the complaint's allegations and consider affidavits and other evidence to determine whether subject-matter jurisdiction exists.  See Capitol Leasing Co. v. FDIC, 999 F.2d 188, 191 (7th Cir. 1993); Reynolds v. Army and Air Force Exchange Service, 846 F.2d 746, 747 (Fed. Cir. 1988).  Asius bears the burden of establishing subject-matter jurisdiction.  See Muscarello v. Ogle County Bd. of Com'rs, 610 F.3d 416, 425 (7th Cir. 2010); Reynolds, 846 F.2d at 748.

B.   **Whether Asius Has Properly Sued a Party Entitled to Enforce the Patents**

The Declaratory Judgment Act provides:

> In a case of actual controversy within its jurisdiction
> . . . any court of the United States, upon the filing of
> an appropriate pleading, may declare the rights and other
> legal relations of any interested party seeking such
> declaration, whether or not further relief is or could be
> sought.

28 U.S.C. § 2201.  The Declaratory Judgment Act provides a remedy, not an independent source of subject-matter jurisdiction.  See Prasco, LLC v. Medicis Pharmaceutical Corp., 537 F.3d 1329, 1335 (Fed. Cir. 2008).  Therefore, a declaratory-judgment action must satisfy Article III's case-or-controversy requirement.  See id.; see also U.S. Const. art. III, § 2.  That requirement is satisfied if "the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal

interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." Maryland Cas. Co. v. Pacific Coal & Oil Co., 312 U.S. 270, 273 (1941); see also MedImmune, Inc. v. Genentech, Inc., 549 U.S. 118, 126-27 (2007).  The Federal Circuit has interpreted the Patent Act to permit suits for infringement only by patentees, assignees, and "virtual assignees" (a term that applies to exclusive licensees who have received "all substantial rights under the patent").  See Enzo, 134 F.3d at 1093. Applying that principle to declaratory-judgment claims for non-infringement and invalidity, the court in Fina Research S.A. v. Baroid Drilling Fluids, Inc., 98 F.3d 1357 (Table), 1996 WL 521465, *2 (Fed. Cir. 1996) held that there was no "case of actual controversy" between the plaintiff and a party that was not entitled to sue on the patents at issue.  As between those two parties, any dispute about the patents was academic.  Id.  Fina Research is a nonprecedential decision, but Asius does not dispute that it accurately states the law in the Federal Circuit.

Like the defendant in Fina Research, Sonion US denies that it has any legal interest in the patents, (see Taylor Decl. ¶¶ 7-10), and insists that Asius' failure to name the proper party in its original complaint cannot be cured by amendment.  See Schreiber, 402 F.3d at 1203 ("In the area of patent infringement, this court has held that if the original plaintiff lacked Article III initial standing, the suit must be dismissed, and the jurisdictional defect

- 7 -

cannot be cured by the addition of a party with standing . . . .").

Asius requests jurisdictional discovery to test Sonion US's representation and to flesh out its theory that the Sonion defendants are really one entity for standing purposes. See Dainippon Screen Mfg. Co., Ltd. v. CFMT, Inc., 142 F.3d 1266, 1272-73 (Fed. Cir. 1998) (concluding that the patent assignee was not an indispensable party to a declaratory-judgment action against that company's parent and exclusive-licensee). Jurisdictional discovery is unnecessary because we believe that Sonion US is misreading the relevant Federal Circuit authorities. A plaintiff must have standing when it files its complaint; later events will not confer standing "retroactively." See Innovative Therapies, Inc. v. Kinetic Concepts, Inc., 599 F.3d 1377, 1384-85 (Fed. Cir. 2010); Prasco, 537 F.3d at 1337; see also Paradise Creations, Inc. v. UV Sales, Inc., 315 F.3d 1304, 1309-10 (Fed. Cir. 2003) (state law that purportedly vested title retroactively did not create standing where the plaintiff did not actually own the patents when it filed suit); Enzo, 134 F.3d at 1093-94 (post-complaint "nunc pro tunc" license did not confer standing). But that does not mean, as Sonion US argues, that we must ignore Asius' amended complaint. On the contrary, when "a plaintiff files a complaint in federal court and then voluntarily amends the complaint, courts look to the amended complaint to determine jurisdiction." Rockwell Int'l Corp. v. United States, 549 U.S. 457, 473 (2007); see also Prasco, 537

- 8 -

F.3d at 1337 ("[W]hile later events may not create jurisdiction where none existed at the time of filing, the proper focus in determining jurisdiction are the facts existing at the time the complaint *under consideration* was filed.") (citation and internal quotation marks omitted; emphasis in original).  At the time that Asius filed its original complaint Sonion Roskilde was the assignee of the '968 and '196 patents.  (<u>See</u> '968 patent and '196 patent, attached as Exs. A and B to Am. Compl.; <u>see also</u> Def.'s Reply at 5 ("Legal title has already passed from the inventors to Sonion Roskilde A/S.").)  If Asius properly serves Sonion Roskilde, and the dispute between those parties is sufficiently immediate and real (<u>see</u> <u>infra</u> Part C), then Asius has standing to seek declaratory relief.

The Federal Circuit cases that Sonion US cites do not hold otherwise.  In <u>Enzo</u>, the appellant (Enzo) brought a declaratory judgment action against the appellee (Geapag) asserting patent invalidity and non-infringement.  <u>Enzo</u>, 134 F.3d at 1091.  Shortly thereafter, Geapag filed a separate action against Enzo for patent infringement, and the cases were consolidated.  <u>Id.</u>  After concluding that Geapag had standing to pursue its patent claims, the district court found Enzo liable for infringement.  <u>Id.</u> at 1092.  On appeal, the Federal Circuit concluded that Geapag lacked standing because there was no written agreement assigning the patents (or all substantial rights thereunder) to Geapag at the time it filed suit.  <u>Id.</u> at 1093.  Geapag's written "nunc pro tunc"

license, executed after the lawsuit was filed, was insufficient to confer "retroactive standing." Id. at 1093.  To hold otherwise "would unjustifiably expand the number of people who are statutorily authorized to sue." Id. at 1093 (quoting Proctor & Gamble Co. v. Paragon Trade Brands, Inc., 917 F.Supp. 305, 310 (D. Del. 1995) (internal quotation marks omitted)).  After concluding that Geapag lacked standing to sue for infringement, the court ruled that it lacked "jurisdiction over Enzo's declaratory judgment claims under Fed. R. Civ. P. 19 for nonjoinder." Id. at 1094.  It is frankly unclear whether the court dismissed the declaratory-judgment claim for lack of subject-matter jurisdiction, failure to join an indispensable party, or both.  But the court clearly did not hold, or even imply, that Enzo could not have joined the patentee by filing a timely motion to amend the complaint.  Indeed, in Mentor H/S, Inc. v. Medical Device Alliance, Inc., 244 F.3d 1365, 1373 (Fed. Cir. 2001) the Federal Circuit invited and then granted a motion to join the patentee on appeal to create standing. See also Prima Tek II, L.L.C. v. A-Roo Co., 222 F.3d 1372, 1381-82 (Fed. Cir. 2000) (acknowledging, but declining to exercise, its authority to join the patentee on appeal to "preserve jurisdiction").

Sonion US also relies on Schreiber for the proposition that, if the original plaintiff lacks Article III standing, "the jurisdictional defect cannot be cured by the addition of a party with standing." Schreiber, 402 F.3d at 1203.  The Schreiber court

- 10 -

actually dealt with a different issue: whether a party with standing at the outset of litigation could lose and then regain standing before entry of judgment. Id. at 1204 (holding that a "temporary loss of standing" could be cured before judgment). In the language Sonion US quotes the court was summarizing its holding in Paradise Creations. Id. at 1203. In that case, the plaintiff corporation was administratively dissolved when it received an exclusive license to the patents at issue. See Paradise Creations, 315 F.3d at 1306. The plaintiff effectively conceded that the license did not convey any enforceable rights at that time, but it argued that under Florida law its post-complaint reinstatement was retroactive to the date of its dissolution. Id. at 1308-09. Therefore, the plaintiff argued, "it constructively held enforceable patent rights on the day it filed its complaint." Id. at 1309. The Federal Circuit rejected this argument, applying the principle it announced in Enzo. Id. at 1310 ("We see no meaningful distinction between a contract provision that purports to vest title retroactively in the plaintiff and a state law that is alleged to vest enforceable title retroactively."). In doing so, it distinguished its decision in Mentor H/S. As an exclusive licensee, the plaintiff in Mentor H/S had a "cognizable injury" for the purposes of Article III, but it lacked standing under the Patent Act to pursue a claim for infringement because the patentee retained substantial rights under the patents. Id. at 1310 (citing

Mentor H/S, 240 F.3d at 1018).  By contrast, the plaintiff in
Paradise Creations "held no enforceable rights whatsoever in the
patent at the time it filed suit, and therefore lacked a cognizable
injury necessary to assert standing under Article III of the
Constitution."  Id.  That fundamental defect — not simply failing
to name the patentee as a party — could not be cured by amendment.
Id.[2]

     The only case that Sonion US cites that truly supports its
argument is Newmatic Sound Systems, Inc. v. Magnacoustics, Inc.,
No. C 10-00129 JSW, 2010 WL 1691862, *3-4 (N.D. Cal. April 23,
2010).  The facts in that case essentially mirror our own: the
declaratory-judgment plaintiff sued a party without ownership
rights in the patents at issue and then amended its complaint to
name the patent owner as a defendant.  The Newmatic court,
reviewing some of the Federal Circuit authorities we have just
discussed, concluded that the amendment failed to cure the standing
problem.  We respectfully disagree the court's reasoning.  First,
the Newmatic court incorrectly focused on the original complaint's
allegations.  See id. at *4; cf. Prasco, 537 F.3d at 1337

---

     [2]  Sonion US selectively quotes Mars, Inc. v. Coin Acceptors, Inc., 527
F.3d 1359, 1367-68 (Fed. Cir. 2007) for the proposition that "a 'standing
deficiency cannot be cured by adding the patent title owner to the suit.'"
(Def.'s Reply at 8.)  The court was referring to suits by non-exclusive
licensees, whom the Federal Circuit has held "suffer[] no legal injury from
infringement."  Id. at 1367 (quoting Sicom Sys., Ltd. v. Agilent Techs., Inc.,
427 F.3d 971, 976 (Fed. Cir. 2005) (internal quotation marks omitted)).  It was
in this context that the court said that "[t]his standing deficiency" — not
standing deficiencies generally — "cannot be cured by adding the patent title
owner to the suit."  Id. at 1368.

- 12 -

(evaluating jurisdiction based upon the plaintiff's allegations in its amended complaint). Second, like Sonion US in this case, the court relied heavily on <u>Schreiber</u>'s one-sentence summary of <u>Paradise Creations</u>. <u>See</u> <u>Newmatic</u>, 2010 WL 1691862, *3. As we have just discussed, <u>Paradise Creations</u> did not hold that the patentee cannot be added by amendment to cure a defect in standing. Instead, the court held that the plaintiff must actually be injured in the Article III sense when it files suit. <u>See</u> <u>Paradise Creations</u>, 315 F.3d at 1310; <u>see also</u> <u>Prasco</u>, 537 F.3d at 1337; <u>Mentor H/S</u>, 240 F.3d at 1019. As far as we can tell from the <u>Newmatic</u> court's opinion, the plaintiff's dispute with the patentee predated its original complaint naming only the patentee's corporation. Therefore, the plaintiff would have had standing under the authorities we have just discussed if the patentee could have been joined.[3] <u>See</u> <u>Ebay, Inc. v. Partsriver, Inc.</u>, Nos. C 10-4947 CW, C 10-5106 CW, C 10-5108 CW, 2011 WL 1522389, *2-3 (N.D. Cal. April 21, 2011) (reaching essentially the opposite conclusion as the <u>Newmatic</u> court on similar facts).

In sum, we conclude that Asius properly amended its complaint to name the patents' assignee as a defendant. So long as it properly serves Sonion Roskilde, Asius' failure to name that

---

[3] The <u>Newmatic</u> court held, in the alternative, that the patentee could not be joined because the court lacked personal jurisdiction over him. <u>See</u> <u>Newmatic</u>, 2010 WL 1691862, *4.

- 13 -

company as a defendant in its original complaint does not affect
its standing to seek declaratory relief.

## C. Whether the Dispute Between Asius and Sonion Roskilde is Sufficiently "Immediate" and "Real" to Support Declaratory-Judgment Jurisdiction

In the alternative, Sonion US argues that Asius has failed to
identify an immediate and real infringement dispute. (Def.'s Mem.
at 9-10.) This argument gets relatively short shrift in the
parties' briefs, but we think it has merit. "[T]o establish an
injury in fact traceable to the patentee, a declaratory judgment
plaintiff must allege <u>both</u> (1) an affirmative act by the patentee
related to the enforcement of his patent rights, <u>SanDisk Corp. v.
STMicroelecs., Inc.</u>, 480 F.3d 1372, 1380-81 (Fed. Cir. 2007), and
(2) meaningful preparation to conduct potentially infringing
activity, <u>Cat Tech LLC v. TubeMaster, Inc.</u>, 528 F.3d 871, 880 (Fed.
Cir. 2008)." <u>Ass'n for Molecular Pathology v. U.S. Patent and
Trademark Office</u>, 653 F.3d 1329, 1343 (Fed. Cir. 2011) (emphasis
added). Sonion US does not specifically dispute that Van
Halteren's alleged statements to Siemens constitute an "affirmative
act . . . related to the enforcement" of the patents. <u>Ass'n for
Molecular Pathology</u>, 653 F.3d at 1343; <u>see also</u> <u>SanDisk</u>, 480 F.3d
at 1381-82.[4] But it challenges whether Asius' "ADEL technology" is
sufficiently developed to sustain a declaratory-judgment action.
(Def.'s Reply at 11-12.) "If a declaratory judgment plaintiff has

_____

[4] We express no view on the issue at this time.

- 14 -

not taken significant, concrete steps to conduct infringing activity, the dispute is neither 'immediate' nor 'real' and the requirements for justiciability have not been met." Cat Tech, 528 F.3d at 880.

**(1) Immediacy**

Asius has failed to demonstrate an "immediate" controversy concerning the patents at issue. "[A]lthough a party need not have engaged in the actual manufacture or sale of a potentially infringing product to obtain a declaratory judgment of non-infringement, there must be a showing of 'meaningful preparation' for making or using that product." Id. at 881 (quoting Arrowhead Indus. Water, Inc. v. Ecolochem, Inc., 846 F.2d 731, 736 (Fed. Cir. 1988)). In Cat Tech, the declaratory-judgment plaintiff was ready to manufacture the subject product, it only needed an "order from a customer with the appropriate dimensions." Id. at 882. Asius' allegation that it has marketed its technology to third parties is relevant to the "immediacy" inquiry, but vague. We have no way of knowing whether Asius is in a position to begin making or selling products based on its technology in the near future. Cf. Lang v. Pacific Marine and Supply Co., Ltd., 895 F.2d 761, 765 (Fed. Cir. 1990) (concluding that the actual controversy requirement was not satisfied where the defendant's infringing product "was not finished until at least 9 months after the complaint was filed."); Mega Lift Systems, LLC v. MGM Well

- 15 -

Services, Inc., No. 6:08 CV 420, 2009 WL 1851919, *4 (E.D. Tex. June 29, 2009) ("Under these facts, the Court cannot determine whether Mega Lift is ready to infringe tomorrow or next year.").

   **(2)  Reality**

Asius has also failed to establish a "real" dispute concerning the patents.  "In the context of patent litigation, the reality requirement is often related to the extent to which the technology in question is 'substantially fixed' as opposed to 'fluid and indeterminate' at the time declaratory relief is sought."  Cat Tech, 528 F.3d at 882 (quoting Sierra Applied Sciences, Inc. v. Advanced Energy Indus., Inc., 363 F.3d 1361, 1379 (Fed. Cir. 2004)).  "The greater the variability of the subject of a declaratory-judgment suit, particularly as to its potentially infringing features, the greater the chance that the court's judgment will be purely advisory, detached from the eventual, actual content of that subject — in short, detached from eventual reality."  Sierra, 363 F.3d at 1379.  The complaint itself is devoid of any allegations that shed light on whether Asius' technology is "substantially fixed."  Ambrose's declaration states that he "satisfactorily demonstrated" Asius' technology to Siemens in 2010, and obliquely refers to "prototypes."  (Ambrose Decl. ¶¶ 4, 10.)  Asius also attaches a June 2011 article written by Ambrose and others that describes the technology and refers to ongoing testing.  (See "A Voice-Activated, Inflatable, Self-Regulating,

- 16 -

Balloon Ear Coupler," attached as Ex. I to Pl.'s Resp.) In a paragraph headed "Current Status" the authors state that "[w]ork is continuing to further qualify the fundamental working principles of the Asius diaphonic valve and ADEL coupler for generating pressure (work) from sound generated by a group of subjects, and to provide for iterative improvements resulting from ongoing study." (Id.) This evidence is equivocal, at best. It may be that Asius' prospective device is "substantially fixed," subject only to further testing. Or else the final product may differ substantially from the prototypes that Asius demonstrated to Siemens. There is simply not enough information in the record to make that determination.

Besides the dearth of relevant facts, the only case Asius cites in support of its argument is distinguishable. See Teva Pharm. USA, Inc. v. Novartis Pharm. Corp., 482 F.3d 1330, 1338 (Fed. Cir. 2007). The circumstances establishing an actual controversy in Teva depended significantly on the statutory framework governing new drug applications. See Teva, 482 F.3d at 1340-46 (Fed. Cir. 2007). That framework does not apply here, and Asius makes no attempt to explain why that case is analogous. In sum, Asius has failed to show meaningful preparation to conduct potentially infringing activity. Its declaratory judgment claims are dismissed, therefore its Patent Act claim for attorneys fees and its state-law claims for tortious interference are also

dismissed.  See 35 U.S.C. § 285 (authorizing the court to award the prevailing party's attorneys fees in "exceptional cases"); Wright v. Associated Ins. Companies Inc., 29 F.3d 1244, 1251 (7th Cir. 1994) ("[T]he general rule is that, when all federal claims are dismissed before trial, the district court should relinquish jurisdiction over pendent state-law claims rather than resolving them on the merits.").  However, consistent with our earlier discussion, we will give Asius an opportunity to amend its complaint.  It may well be that its technology was closer to commercialization when it filed this lawsuit than its previous pleadings have suggested.  See Rockwell, 549 U.S. at 473 ("The state of things and the originally alleged state of things are not synonymous . . . .").

**D.  Sonion US's Motion for Sanctions**

We took Sonion US's motion for sanctions under advisement pending our decision on its motion to dismiss.  Our earlier discussion dispenses with the main ground for its motion: Asius' decision to file an amended complaint naming the foreign defendants in the face of Sonion US's argument that the amendment was futile. (Def.'s Sanctions Mem. at 2-4, 7-8.)  We would have been reluctant to impose sanctions on this basis even if we had concluded that Sonion US correctly stated the law.  Although we tend to agree with Sonion US that Asius should have named the foreign defendants in its original complaint, its failure to do so is not sanctionable.

- 18 -

Asius had at least some basis to believe that Sonion US is just an extension of the Danish parent corporation in the United States. (<u>See</u> Am. Compl. at Exs. A-F (pages from Sonion's website suggesting that Sonion US is the sales arm of Sonion in the United States).) Sonion US cites a laundry list of other issues: (1) Asius knew or should have known that Van Halteren worked for Sonion Nederland, not Sonion US; (2) it is a limited liability company, not a corporation as it had originally alleged; (3) it did not file a timely Local Rule 3.2 notification of affiliates; and (4) it misidentified Sonion US as "a foreign company registered to transact business in Illinois" when, in fact, it is an Illinois corporation.  These errors do not rise to the level of sanctionable conduct, individually or cumulatively.  Sonion US's motion for sanctions is denied.

<u>**CONCLUSION**</u>

Defendant's motion to dismiss (26) is granted.  Plaintiff's amended complaint is dismissed without prejudice. Defendant's motion for sanctions (40) is denied.  Plaintiff is given leave to file an amended complaint by January 9, 2012 that cures the deficiencies we have identified, if it can do so.  If plaintiff chooses not to file an amended complaint by that date, we will dismiss the case with prejudice.

DATE:        December 13, 2011

ENTER:       _____

             John F. Grady, United States District Judge